CASE 15—PETITION EQUITY—APRIL 5.

# Louisville Banking Co. v. Leonard, Trustee.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. A MORTGAGE TO SECURE FUTURE ADVANCES is valid to the extent of the amount named in the mortgage, although it purports upon its face to be given to secure an amount advanced at the time; and parol testimony is admissible to show the true consideration.

    As all the advances in this case were made before any other lien was created, the question is not presented as to the rights of persons who have acquired liens after the giving of such a mortgage and before all the advances were made.

2. WHERE A NOTE AND MORTGAGE ARE GIVEN TO SECURE FUTURE ADVANCES they will secure advances made after as well as those made before the maturity of the mortgage note.

3. THE RENEWAL OF EVIDENCES OF INDEBTEDNESS does not affect the continuance of a lien given to secure the indebtedness.

4. HOMESTEAD.—Where the wife of the mortgagor has united in a mortgage she can not claim a homestead upon the ground that the mortgage purported upon its face to be given to secure money advanced at the time, when, in fact, it was given to secure future advances.

5. PAROL EVIDENCE TO VARY WRITTEN INSTRUMENT.—The rule that a written instrument can not be varied or contradicted by parol evidence does not apply in cases where the original contract was verbal and entire, and only a part of it was reduced to writing.

BARNETT, MILLER & BARNETT FOR APPELLANT.

1. A mortgage given to secure future advancements to the mortgagor is a valid and enforceable contract. (Shirras v. Craig, 7 Cranch, 50 (1812); Conrad v. Atlantic Ins. Co., 1 Peters, 448 (1829); Lawrence v. Tucker, 23 Howard, 22 (1859); Robinson v. Williams, 22 N. Y., 380 (1860); Fassett v. Smith, 23 N. Y., 252 (1861); McKnister v. Babcock, 26 N. Y., 278 (1863); Miller v. Lockwood, 32 N. Y, 293 (1865); Brown v. Kieffer, 71 N. Y., 610 (1887); Spear v Skinner, 35 Ill., 291 (1864); 11 Am. Law Reg. (N. S.), 273 (Mitchell, 1872); 1 Jones on Liens, sec. 77; 1 Jones on Mortg., secs. 351–374; Pomeroy's Eq. Jur., sec. 1235; Miller v. Daniel, 8 Ky. Law Rep., 330; 2 Am. Law Reg. (N. S.), 12 (Redfield, Nov., 1862); Lyle v. Ducomb, 5 Binn., 585; Moroney's Appeal, 24 Pa. St., 372; Gordon v. Preston, 1 Watts, 385; Wisconsin Planing Mill Co. v. Schuda, 39 N. W. Rep., 558 (1888); Tapia v. Demartini, 19 Pacific Rep, 643 (1888); Tully v. Harloe, 35 ·Cal,, 302; Googins v. Gilmore, 47 Me., 13; Morris v. Cain (La.), 1

Louisville Banking Co. v. Leonard, Trustee.

Southern Rep., 977; Ward v. Cooke, 17 N. J. Eq., 93; Witczinski v. Everman, 51 Miss., 844; McDaniels v. Calvin, 16 Vt., 300; Leeds v. Cameron, 3 Sum., 492 (1839); National Bank of Gennessee v. Whitney, 13 Otto, 99.)

2. It is admissible to explain fully by parol evidence that the mortgage, though absolute on its face, was really given to secure future advancements; and it is valid for that purpose, though no money passed at the time the mortgage was given. (1 Greenleaf's Evi., sec. 283, 284a; 2 Starkie's Evi., p. 570; 1 Jones on Mortgages, secs. 96, 351, 374, 376, 384; McCaughrin v. Williams, 15 S. C., 505; Kaphan v. Ryan, 16 S. C., 352; Walker v. Walker, 17 S. C., 329; Moffatt v. Harden, 22 S. C, 9; Dial v. Gary, 24 S. C., 572; Moses v. Hatfield, 27 S. C., 324; Harrington v. Samples (Minn.), 30 N. W. Rep., 671; Manufacturing Co. v. Gady (Neb.), 9 N. W. Rep., 569; Dicken v. Morgan (Iowa), 7 N. W. Rep., 145; Bolles v. Sachs (Minn.), 38 N. W. Rep., 862; Lewis v. Gray, 1 Mass., 297; Knight v. Knotts, 8 Rich., 35; Brown v. Keiffer, 71 N. Y., 610; Shirras v. Craig, 7 Cranch, 50; Miller v. Daniel, 8 Ky. Law Rep., 339.)

3. A mortgage with note given as collateral security for future advances will secure advancements made after the maturity of the mortgage as well as those made before such maturity. Especially is this true when the notes dated after the maturity are mere renewals of old notes given before the maturity of the mortgage. (Lawrence v. Tucker, 23 Howard, 22; Boswell v. Goodwin, 31 Conn., 83; Dunham v. Day, 15 Johns., 555; Bolles v. Chauncey, 8 Conn., 389; Clark v. Pond, 14 Conn., 334; Smith v. Prince, 14 Conn., 372; Chaffee v. Whitfield, 4 So. Rep., 504; Kaphan v. Ryan, 16 S. C., 352; Thomas v. Wyatt, 5 B. M., 134; Burdette v. Clay, 8 B. M., 295; Lowry v. Fisher, 2 Bush, 70; Pryor v. Smith, 4 Bush, 382; Bank of America v. McNeil, 10 Bush, 56.)

4. The mortgage was absolute in its terms, and passed Mrs. Duile's homestead. (Drye v. Cook, 14 Bush, 465; Wing, &c., v. Hayden, &c., 10 Bush, 280; Kaufman v. Haish, 1 Ky. Law Rep., 55.)

GEO. L. EVERBACH FOR APPELLEE, LEONARD, TRUSTEE.

1. The oral contract relied on is not good as against creditors. When the rights of third parties are affected, the deed must speak for itself, and evidence *aliunde* is not competent.

   The cases relied on by counsel for appellant decide questions between the mortgagor and mortgagee, but in this case we have an insolvent estate, and unsecured creditors whose rights are affected.

2. The ten Deutsch notes sued on were not intended to be secured by the mortgage. The only notes secured were "notes and acceptances of regular dealers to whom Duile sold his furniture in the regular course of business."

3. A deed which misrepresents the transaction it recites, and the consideration on which it is executed, is liable to suspicion.

    The mortgage of appellant, which recites an indebtedness of five thousand dollars, when no such indebtedness existed, is constructively fraudulent, there being nothing in the mortgage to refer to future advancements.

4. A mortgage to be valid must be made so as to disclose its purpose, that creditors may know what is intended to be secured. (12 Bush, 209; 31 Conn., 74; 44 Penn. St., 423; 31 Vt., 122; Story's Eq. Jur., vol. 2, p. 251; Washb. Real Property, vol. 2, pp. 143–8.)

5. To make a mortgage unassailable by creditors, it must have been made (1) in good faith, and (2) to secure a debt created simultaneously with its execution. (79 Ky., 182.)

ISAAC T. WOODSON FOR APPELLEES, CATHERINE DUILE AND INFANT DAUGHTER.

1. Where the wife unites with the husband in a mortgage which purports to be given to secure money advanced at the time, when, in fact, it was given to secure future advances, the mortgage does not pass the homestead. The wife is not presumed to have contracted beyond the purport of the instrument. (Gen. Stats., chap. 38, art. 13, sec. 13; *Idem*, chap. 24, sec. 21; Hedger v. Ward, 15 B. M., 116; Hatcher & Wife v. Andrews, 5 Bush, 561; Prather v. McDowell, 8 Bush, 61; Pierce, Tolle & Holton v. Hall, 12 Bush, 212.)

2. The collateral paper was not valid for any purpose. (Steinharter v. Covington City National Bank, 10 Ky. Law Rep., 359.)

3. The renewals constitute a new contract. (Letcher v. Bank of Commonwealth, 1 Dana, 84.)

A. DUVALL FOR APPELLEE.

    Brief not in record.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

Prior to April 22, 1886, F. J. Duile, who was then a furniture manufacturer, had been in the habit of discounting the notes which he took from his customers with the appellant, the Louisville Banking Company. About the time named he wished to discount to the bank more paper upon one of his patrons than it was willing to accept upon one person. To induce it to do so he executed to it his note for five

thousand dollars, dated April 22, 1886, and due one year thereafter; and, to secure its payment, a mortgage, absolute in its terms, and in which his wife, Catharine Duile, united, upon three adjoining lots in the city of Louisville, upon one of which they lived, and upon which property the furniture manufactory was located. There was already a purchase money lien upon one of the lots and a mortgage lien upon another. The note and mortgage were delivered to the bank as additional security to that afforded by the names of the makers and indorsers upon the paper which Duile might *in futuro* discount to it. They were to be a continuing security for this purpose, just as if he had deposited with the bank a stock certificate to secure it.

The defeasance clause in the mortgage provides: "Whereas, said first-named party of the first part has executed to the party of the second part his promissory note for five thousand dollars, payable in one year; now, if this note should be paid; and if the parties of the first part will also, until it is paid, keep the buildings, machinery and stock on the lot insured to two-thirds of its value, or reimburse to the party of the second part the premium for so keeping it insured, then this deed to be void, otherwise to be and remain in full force."

It is not stated in either the note or the mortgage that they were given to secure future advances to or indebtedness by Duile to the bank. After their execution he continued to discount the notes of his customers to the bank, and among other paper he discounted to it and received the money upon ten

accommodation notes, drawn in his favor by one
Deutsch, for different sums, and bearing different
dates. Their accommodation character was not known
to the bank when Duile indorsed them to it. They
are all dated after the maturity of the five thousand
dollar note, but it is proven that save one, for three
hundred and fifty dollars, they are renewals of notes
given prior to its maturity.

October 10, 1887, Duile made an assignment for the
benefit of his creditors. All of .the notes upon his
customers which he had discounted to the bank had
then been paid, but it still held the ten Deutsch notes,
the earliest being dated August 8, 1887, and the last
one October 8, 1887, and amounting in all, as shown
by the commissioner's report filed in this case, to one
thousand seven hundred and sixty-nine dollars and
ninety cents.

In this suit brought by Duile's assignee to settle
the estate the bank asserted these notes as a pre-
ferred claim by virtue of the five thousand dollar
mortgage. It was rejected as such, but allowed as
a general debt against the trust estate. The lower
court also allowed a homestead of a thousand dollars
in the property embraced by the bank's mortgage,
and it has appealed.

It is claimed by the appellees that the mortgage was
given to secure the bank as to the notes of one par-
ticular customer of Duile ; and that in any event it
was only to secure it as to paper discounted to it
upon his customers that had been given for value, or
as to what is sometimes known as "business paper."
The evidence, however, shows it was the agreement

that it was to be a continuing collateral security for any indebtedness of Duile to the bank in the future, whether arising before or after the maturity of the mortgage note. This is substantially proven by the president of the bank, by Deutsch, and another party, and Duile has not testified. There is evidence tending to show that this was known to his wife, and there is an entire absence of fraud or unfair dealing upon the part of the bank in the transaction.

It may now be regarded as settled law in this country, by virtue of a long line of decisions, beginning with the leading case of Shirras, &c., v. Craig, &c., 7 Cranch, 34, that a mortgage to secure future advances is a valid contract. The only proper question in such a case is the *bona fides* of the transaction. It was said by Judge Story, in the case of Leeds v. Cameron, 3 Sumner, 492: "Nothing can be more clear, both upon principle and authority, than that, at the common law, a mortgage *bona fide* made may be for future advances and liabilities for the mortgagor by the mortgagee, as well as for present debts and liabilities;" and in Conard v. Atlantic Insurance Company, 1 Peters, 448, the Supreme Court of the United States, speaking through the same distinguished judge, said: "Mortgages may as well be given to secure future advances and contingent debts as those which already exist, and are certain and due. The only question that properly arises in such cases is the *bona fides* of the transaction." In Lyle v. Ducomb, 5 Binney, 585, the court, speaking through Tilghman, C. J., said: "There can not be a more fair, *bona fide* and valuable consideration than the drawing or indorsing of notes

at a future period for the benefit and at the request of the mortgagor, and nothing is more reasonable than the providing a sufficient indemnity beforehand."

There has been some diversity of views between courts and text-writers as to the rights of mortgagees under mortgages for future advances as to third parties. Some have thought that if the mortgage did not give notice of what it was, in fact, intended to secure, or that it was for future advances, and a necessity, therefore, arose for proof *aliunde*, that it was invalid as to third persons. It was said, however, by Marshall, C. J., in the case of Shirras, &c., v. Craig, &c., *supra:* "It is true that the real transaction does not appear on the face of the mortgage. The deed purports to secure a debt of 30,000*l* sterling due to all the mortgagees. It was really intended to secure different sums due at the time to particular mortgagees, advances afterwards to be made, and liabilities to be incurred to an uncertain amount. * * If, upon investigation, the real transaction shall appear to be fair, though somewhat variant from that which is described, it would seem to be unjust and unprecedented to deprive the person claiming under the deed of his equitable rights, unless it be in favor of a person who has been, in fact, injured and deceived by the misrepresentation."

In the case now before us it is said that the mortgage does not truly recite the transaction. It may more properly be said that it only recites a part of it. It is a general rule that a written instrument can not be varied or contradicted by parol evidence of what occurred anterior to or when it was executed; but

Greenleaf, in speaking of it, says: "Nor does the rule apply in cases where the original contract was verbal and entire, and a *part only* of it was reduced to writing."

Here it was the verbal agreement to mortgage the property to the extent of five thousand dollars. This was reduced to writing; but the further part of the agreement, that it was to secure future indebtedness to that amount, was not embraced in the writing. No one could be imposed upon to his injury because this was not done, inasmuch as the mortgage gave notice that the property was in lien to the extent of five thousand dollars. The liability could not, of course, be enlarged beyond the amount named in the mortgage to the injury of subsequent creditors; but here no one is prejudiced, as the existing indebtedness is less than the amount of it.

It is said in 1 Jones on Mortgages, sections 374-376 and 384: "It is not necessary that the mortgage should express on its face that it is given to secure future advances. It may be given for a specific sum, and it will then be security for a debt to that amount. This definite sum will then limit the extent of the lien. * * * The omission to state on the face of the mortgage the time when the first advances are to be made is not material. It is sufficient that they are to be made from time to time, as the mortgagor may desire, during a specified period. The amounts of the several advances, and the times when they were actually made, and the object of the mortgage, may be shown by extrinsic proof, for in such case the proof does not contradict the mortgage, or alter its

legal operation and effect in any way.  Although the deed purports to be in consideration of a definite sum in hand paid at the time, it may be shown by parol evidence that the deed was made to secure advances made and to be made, to that extent.   *   *   *

"Parol evidence is admissible to show the true character of a mortgage, and for what purpose and what consideration it was given.   Although it be for a definite sum, and secures the payment of notes for definite amounts, it may be shown that the mortgage was simply one of indemnity.   When the object is simply to indemnify the mortgagor for a liability he has incurred, or may incur, the amount of the mortgage, or of the mortgage note, serves merely to limit the extent of the security."

This appears now to be the accepted rule, and it was, therefore, admissible to show by parol evidence that the mortgage to the appellant, though absolute upon its face, was, in fact, given for future advancements.   No other lien was created upon the mortgaged property between the giving of the mortgage to the appellant and the time when the last note was discounted, and hence no question arises between lienholders.

The fact that the notes held by the appellant are dated after the maturity of the mortgage note does not, in our opinion, affect the question of lien.   With one exception they were renewals of indebtedness existing before its maturity, and the renewal of the evidences of the indebtedness would not affect the continuance of the security.   (Burdette, &c., v. Clay, &c., 8 B. M., 287.)

Louisville Banking Co. v. Leonard, Trustee.

It is immaterial, however, in our opinion, whether they were executed before or after its maturity. It was given to secure future indebtedness to the amount of it. It was executed simply as a collateral, and it should in reason make no difference whether it was due one day or ten years after its execution. It was so held by the Supreme Court of the United States in the case of Lawrence v. Tucker, 23 Howard, 14, where the note given to secure the future advances was payable one day after its date.

As to the homestead right, it is urged for Mrs. Duile that she can be affected by the mortgage according to its terms only, and that its effect upon her rights is bounded by the extent of her acknowledgment, or the tenor of the paper she acknowledged. The bank, however, holds the note and mortgage for five thousand dollars. She consented by the mortgage to putting the property and her rights in it in lien to this extent. The liability asserted is less than that sum. It was intended to secure it by the mortgage. The advances were undoubtedly made upon the faith of it, and in all fairness by the bank. Under these circumstances she is not prejudiced by the allowance of a less sum as a lien against the property than that for which she stipulated. Instead of being prejudiced she is benefited, and can not be heard to complain.

Judgment reversed, with directions to allow the appellant's claim as a preferred one, with precedence over the claim to a homestead.