CASE 72—PETITION EQUITY—MARCH 28.

91   379<br/>132   303

## Roberts, &c., v. Bruce.

APPEAL FROM HENRY CIRCUIT COURT.

1. ASSIGNMENT OF DEBT TO SURETY—SUBROGATION.—The absolute payment of a debt without any agreement that it is to continue in force for some purpose, or the benefit of some one, terminates not only its existence, but that of any lien to secure its payment. But where one becomes the surety of a debtor to enable him to raise money to pay a debt secured by lien, under an agreement that the debt is to be assigned to the surety to indemnify him, and the debt is assigned to the surety by the creditor pursuant to the agreement, the assigned debt, together with the lien to secure it, remains in force for the benefit of the surety; and this is true, although the creditor may not be a party to the agreement, and the assignment may not be made at the time of payment.

2. SAME—RENEWAL OF NOTE.—Although the surety, under such an agreement, did not go upon two renewals of the note upon which he was bound, yet when he again became bound upon a subsequent renewal his right to his indemnity again attached, it never having been surrendered.

3. SAME—Such an agreement for indemnity may, in addition to the liability the surety assumes at the time, be made to extend to other debts upon which he is already bound, and also to liabilities which he may, in future, assume for the principal.

4. SAME.—When a surety, in order to enable the principal to raise money to pay the debt for which he is bound, becomes surety to a new creditor, he is entitled, notwithstanding the change in the creditor, to retain any indemnity in his possession or under his control.

5. LIEN NOT DESTROYED BY PERSONAL JUDGMENT—ASSIGNMENT OF JUDGMENT.—A personal judgment upon a note secured by a vendor's lien does not operate to destroy the lien, and an assignment of the note and judgment carries the lien with it.

JOHN D. CARROLL FOR APPELLANTS.

1. A judgment, when once paid off or satisfied, can not afterwards, by any agreement of the parties, be restored to life or vitality. (Freeman on Judgments. sec. 466; Averill v. Loucks, 6 Barb. Ch'y, 25; Marion v. Vedder, 5 Cow., 671; Troup v. Wood, 4 John. Ch'y, 228; Winslow v. Clark, 2 Lans., p. 380; Thompson v. George, 86 Ky., 311.)

2. While a *judgment creditor* may, by parol, assign a judgment to the person who pays it *at the time it is paid*, the *judgment debtor* can not, without the knowledge or consent of the *judgment creditor*, agree with another party that the judgment shall be assigned to him, so as to give validity to an assignment by the judgment creditor after the judgment has been satisfied.

3. If the judgment was assigned to protect W. O. Bruce from loss as surety on the bank note, the very moment he was released as surety the indemnity was dead, and if he subsequently became bound on other paper, although for the same debt, it did not restore life to the indemnity, nor authorize him to claim a lien by virtue of it. (Thompson v. George, 86 Ky., 311.)

4. The assignment of the note upon which the judgment was founded was of no effect, because the note, having been merged in the judgment, could not, after the judgment, be assigned or transferred.

WM. CARROLL FOR APPELLEE.

1. The payment of the amount of a judgment does not work an extinguishment of it where it is the intention of the parties that it shall not do so. The intention of the parties governs. (McLear v. Morgan, &c., 5 B. M., 282.)

2. Even if there was an extinguishment of the note, and, therefore, an extinguishment of the lien, the assignment of the note by Mrs. Nichols by the direction of S. Bruce is evidence of a promise by S. Bruce to indemnify W. O. Bruce out of his estate to the extent of that note, and that agreement being evidenced by the writing executed in 1882, may be enforced as a claim against the estate to that extent. (4 Litt., 482; 5 Ky. Law Rep., 886.)

3. To the claim that as the judgment merged the note and the judgment

waส satisfied, W. O. Bruce took nothing by the assignment of the note, the answer is, that the assignment of the note by the writing of 1882, and prior thereto, is an acknowledgment of the liability of S. Bruce's general estate as set forth in that writing, and makes for W. O. Bruce a stronger claim than the redelivery of a satisfied note, which has been held to be valid and enforceable in the case of Thompson's Adm'r v. George, 86 Ky., 311.

4. The recovery of personal judgment on the note did not operate as an extinguishment of the lien on the land or a bar to its enforcement. (Civil Code, sec. 376; Clark v. Hunt, 3 J. J. M., 558; Bradley v. Curtis, 79 Ky., 327.)

THOMAS H. HINES OF COUNSEL ON SAME SIDE.

Argued orally.  No brief in record.

CHIEF JUSTICE HOLT DELIVERED THE OPINION OF THE COURT.

Stanley Bruce made an assignment for the benefit of his creditors generally in 1887, being then the owner of a tract of land upon which his brother, the appellee, W. O. Bruce, claims to have a lien for money paid by him as the security of Stanley Bruce to the extent of the amount of a note given by the latter for a part of the purchase money of the land, and which W. O. Bruce claims was assigned to him as indemnity.

The appellants, who are general creditors of Stanley Bruce, deny the existence of any such lien, and a brief statement of facts, as to which there is little dispute between the parties, is necessary to a consideration of the question.

In 1877 Frances Kelly held a note upon Stanley Bruce for two thousand eight hundred dollars, bearing ten per cent. interest, dated April 30, 1875, and due one day thereafter, which had been executed for a part of the purchase money of the land, and in that year she obtained a personal judgment only upon

it, none being sought to enforce the lien. This she had a right to do without its operating to destroy the lien. Stanley Bruce desired to pay the judgment, but did not have the money. He applied to the appellee to become his surety to a bank for it, but the appellee refused, because he was already his surety to L. M. Sanford and D. F. Caplinger for considerable sums.

It was finally agreed, however, that if he would do so, the note and judgment upon it should be assigned by Frances Kelly to him to secure him as to the Sanford and Caplinger debts, the debt to be then created in the bank, and all other debts upon which he was then, or might become, bound as the surety of his brother; and thereupon on June 5, 1878, he did become such surety to the bank upon a note for three thousand nine hundred and sixty-eight dollars, the proceeds of which were at once paid to Mrs. Kelly. The evidence shows that this was substantially the agreement between the two brothers, but it was not then reduced to writing, nor was this necessary to its validity. There is no question but what up to this time there was a lien upon the land for the payment of the note held by Mrs. Kelly, or the judgment that had been rendered upon it.

The note was, however, not assigned by her to the appellee until June 29, 1878, or twenty-four days after she had been paid; but it was then done in pursuance of and to carry out the agreement previously made between the Bruces. She also, at the same time, authorized her attorney to assign the judgment to the appellee, and he did so on July 5, 1878. In June, 1882, a part of the land was mortgaged to a third

party to obtain money to pay the bank debt in part. In this mortgage the appellee united, owing to his holding the lien debt upon the land, but only to the extent of giving the mortgagee the first lien, and at this time the parol agreement between the Bruces, already recited, was reduced to writing. Subsequently one thousand dollars was borrowed of S. E. DeHaven to pay the balance of the bank debt, and the appellee became the surety upon it, and it is one of the debts as to which he now claims to be indemnified by the Kelly purchase money debt. Money was also borrowed of R. L. Ricketts to pay upon the Sanford and Caplinger debts, the appellee also becoming surety for it, and as to it and the remainder of the Sanford debt, he also claims the same indemnity.

The three debts to DeHaven, Ricketts and Sanford amount to much more than the Kelly debt, and the appellee has paid all of them. If he is entitled to priority over the general creditors as to the land, or the proceeds of a sale of it, it is of course only to the amount of the Kelly debt, and this is all that the lower court allowed.

The appellants contend, first, that when Mrs. Kelly assigned the note, and her attorney the judgment, to the appellee, her debt had been extinguished by its prior payment to her, and that as none then existed, the appellee acquired nothing by the assignments. If this be true, then of course no indemnity ever existed, and it cuts off all other questions. If not true, then the appellants say the parol agreement between the Bruces as to indemnity in fact embraced the bank debt only; that upon two of the seven re-

newals of the notes for it the appellee was not bound, and that the moment he ceased to be liable the indemnity died, although he subsequently became bound again for the same debt; and if this be not so, then lastly, even if the agreement as originally made also embraced the Caplinger and Sanford debts, and any debts upon which the appellee might thereafter become bound as the surety of Stanley Bruce, yet the bank and the Caplinger notes were paid; that the DeHaven and the Ricketts debts were new ones subsequently created, and that any agreement between the Bruces that the Kelly debt should be held by the appellee as indemnity for any liability as surety for his brother to be created *in futuro* was not valid as to the future creditors of Stanley Bruce. None of these positions can, upon the facts of this case, be sustained. Undoubtedly, the absolute payment of a debt without any agreement or understanding that it is to continue in force for some purpose, or the benefit of some one, terminates not only its existence, but that of any lien to secure its payment. It can not be revived by any subsequent agreement, nor again be forced into life to secure a new debt or some other engagement.

Freeman on Judgments, section 466, says: "Payment produces a permanent and irrevocable discharge, after which the judgment can not be restored by any subsequent agreement, nor kept on foot to cover new and distinct engagements."

In accordance with this well-settled rule it was held by this court in Thompson's Adm'r, &c., v. George, 86 Ky., 311, that the redelivery of a mortgage which had

Roberts, &c., v. Bruce.

been satisfied by the payment of the debt it was given to secure, upon an agreement that it should secure another debt, created no lien. ‘ It is true equity could not substitute the appellee to the right of Mrs. Kelly as to her debt as it would if he had paid it as surety for it.   It had to be done by agreement, and could not be by equitable subrogation.   It is also true she was not present when the agreement was made between the Bruces; but by the payment to her they became the only interested parties; the note was not surrendered to the debtor, nor any entry of satisfaction of judgment made; there was no intention that the lien should be released, and in a short time after the agreement was made she, in conformity to it, assigned the note, and had her attorney assign the judgment to the appellee.

Upon such a state of case it should not be held that the debt was extinguished by the payment to Mrs. Kelly.   This would be inequitable.   The chancellor would not listen to the debtor, Stanley Bruce, were he asking it.   It was virtually a payment by the appellee under an agreement with the debtor that the debt was to remain in force as his indemnity. The agreement was made by them in good faith, and long before the debts of the appellants were created. The obligation did not die with the payment to Mrs. Kelly, but by the agreement of the parties really in interest then made, survived for the benefit of the appellee.   It is true he did not go upon two renewals of the bank note, each lasting about six months, the one in August, 1880, and the other in August, 1881; but thereafter he again became and was bound for

Vol. 91—25.

it when the money was gotten of DeHaven, and also when the agreement with his brother was reduced to writing in June, 1882. It was the same debt. The Kelly note was never surrendered by him, nor was the judgment upon it ever released. In fact, he re-mained bound all the time for the Sanford debt, and also for the Caplinger debt until the Ricketts money was borrowed. When he again became bound for the bank debt his right to the Kelly debt as indemnity again attached by virtue of the agreement between him and his brother, it never having been surren-dered. This intention and understanding is shown by the writing of June, 1882, signed by both of them, and which recites:

"W. O. Bruce holds said note and judgment to indemnify and secure him, as the security of said Stamper Bruce, in a note to the Bank of New Castle and in a note to L. M. Sanford and D. F. Caplinger, and further to indemnify and secure him in any and all obligations upon which he is now, or may be here-after, held as the security of said Stamper Bruce."

It is said, however, that the bank and the Caplinger debts were paid; that the DeHaven and Ricketts debts were new ones, and that the indemnity could not ap-ply to them, even if that were the agreement, because it could not be made to cover any future liability of the appellee as surety of Stanley Bruce. They were created, however, to raise money to pay off the debts upon which the appellee was liable as surety, and as to which he held the indemnity. In such a case, in the absence even of an express agreement to that ef-fect between the parties, the security should have the

right to continue to hold his indemnity. His liability, although to another party, still continues, and the money raised having been applied in payment of the original debt, his right to the indemnity should be upheld in equity. In our examination we have been able to find no case upon this point; but any other rule would be inequitable, and contrary to natural justice.

If a security, when he pays the debt, be entitled, because it is equitable, to the benefit as against the debtor of all collateral securities held by the creditor, equally should a surety, when he renews the suretyship to a different party, but to raise money to pay the first liability, be entitled to retain any indemnity in his possession or under his control. Its continuance for his security should not be affected by the change.

This court, in the case of the Louisville Banking Company v. Leonard, Trustee, &c., 90 Ky., 106, held that a mortgage upon real estate for a certain sum, given *bona fide* to secure future advances, is valid. That decision is supported by both reason and authority, and likewise we see no reason why an indemnity like this one should not be valid where the parties have, in good faith, agreed that it shall secure the surety in liabilities that may be thereafter assumed for the principal. No one here was liable to be imposed upon to his injury. The deed to Stanley Bruce gave notice to every one that the purchase money lien existed. The judgment for the amount of it was of record, as well as the assignment of it to the appellee. Every one was told by the record that

the property was in lien for a certain sum. There was no secret lien that might operate as a fraud upon creditors. True the assignment of the note to the appellee was not of record; but that of the judgment was, and really it made no difference as to others whether the lien appeared upon record as held by Mrs. Kelly or the appellee. There was no entry of satisfaction or release of lien. The debts of the appellants were created not only long after the agreement in parol was made between the appellee and his brother, but after it was reduced to writing in 1882; and the *bona fides* of the entire transaction being beyond doubt, the judgment is affirmed.

Judge PRYOR not sitting.