CASE 61—ACTION TO ENFORCE A MORTGAGE LIEN AND CROSS-ACTION ASSERTING PRIOR LIEN.—NOV. 28.

# Jarboe & Others v. Shiveley & Others.

APPEAL FROM MARION CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND CROSS-PLAINTIFFS APPEAL. REVERSED.

MORTGAGE TO INDEMNIFY SURETY—CHANGE OF FORM OF DEBT.

Held: A mortgage executed by the principal in a note to the sureties therein to save them "harmless in said suretyship" continued in force to indemnify the sureties against loss on account of the execution by the same obligors of a new note to raise money to pay off the note described in the mortgage.

C. S. HILL, ATTORNEY FOR APPELLANT.

The sole question in this case is whether or not the borrowing the money by Moser and appellant from the bank and paying it to Ballard was a novation. We say no.

The object of the mortgage, as clearly expressed, was to save the sureties harmless, as sureties, and when they borrowed the money from the bank with appellants continuing as sureties, it did not change the debt or the liability; the only change was the payee of the note.

When a mortgage is given to secure a debt, or to indemnify sureties, it stands as long as the debt remains unpaid. Moore v. Thompson, 100 Ky., p. 231.

JOHN McCHORD, ATTORNEY FOR APPELLEE.. WRIGHT & MOSS OF COUNSEL.

The appellants, Jarboe & Luckett, assert in their cross petition that on February 17, 1852, they became surety for W. B. Moser on a note to one Ballard, for $220, and Moser and wife gave them a mortgage of indemnity as sureties on the same land afterwards mortgaged to the plaintiff herein; that on June 18, 1892, said Moser borrowed of the bank $252 to pay said $220 Ballard note, and appellants signed said bank note as surety for Moser; that the bank brought suit on one of the renewals of said note on September 10, 1898, which at that time amounted to $294, which, with the costs of the action appellants were compelled to pay, and appellants are now insisting that the mort-

Jarboe, et als., v. Shiveley, et als.

gage executed to them to secure them on the Ballard note, se-
cures them as sureties on the bank note, long after they had
been released from the Ballard note by limitation.

It is expressly stated in appellant's petition that Moser did
pay off and fully satisfy the Ballard note, on which they
were sureties.

We claim that the note to the bank was an entirely sep-
arate and distinct transaction from the obligation on the Bal-
lard note, and is a complete novation. Clark on Contracts, pp.
603-611; Fitzpatrick, &c., v. Apperson's Exr., 79 Ky., 276; Moore
v. Thompson, 100 Ky., 231.

OPINION OF THE COURT BY JUDGE BURNAM—REVERSING.

The appellee, Robert Shiveley, instituted suit in equity
against William B. Moser and wife on two notes, for
$187.50 each, dated on the 6th day of February, 1895, and
due respectively on the 1st days of January and July,
1896, and asked for the enforcement of a mortgage lien,
given simultaneously with the execution of the notes, on
a tract of 312 acres of land, to secure their payment. Sub-
sequently appellants, John Jarboe and C. B. Luckett, filed
a petition to be made parties to the proceeding, and made
same a cross petition against Moser and wife, and alleged
that they each became sureties for the defendant W. B.
Moser on a note executed to C. L. Ballard on the 17th day
of February, 1882, for the sum of $220, and so continued
as sureties on said note to Ballard until the 18th day of
June, 1892, when they and the principal, W. B. Moser, were
compelled to, and did, borrow from the Marion National
Bank of Lebanon, Ky., the sum of $252, with which to pay
the note to Ballard's executor; that Moser executed to the
bank his note for this amount, with petitioners continu-
ing as his sureties, and with the proceeds of which they
paid Ballard's executor the principal and interest of the
original note; that since the execution of the note to the

bank it has been renewed by Moser, with these petitioners as sureties, from the —— day to the —— day of ——, 1898; that on the 10th day of September, 1898, the Marion National Bank instituted suit thereon against Moser and petitioners, and recovered judgment thereon for $294.10, and $10.35 costs, and that the petitioners were compelled to, and did, pay said judgment and costs, as Moser was insolvent; that at the time they signed said note to Ballard, above set out, Moser and wife, in order to indemnify them against loss on account of their suretyship, did, on the 17th day of February, 1882, execute a mortgage to said petitioners on the same tract of land mortgaged to appellee, and they allege that by virtue of said mortgage they have lien on the land to secure a repayment to them of the money so paid to the bank, superior to the claim of plaintiff. A general demurrer was filed and overruled to the answer of appellants. Thereupon appellee filed answer to the cross petition of Jarboe and Luckett, in which he alleges, in substance, that the mortgage executed by Moser and wife to appellants for $220 had been fully paid off at the time the note was so executed by Moser to the bank, to which appellants demurred, and the court sustained the demurrer to the answer to the cross petition of appellants, and carried it back, and dismissed their petition, in effect holding that the payment of the debt due Ballard's executor with the money borrowed from the bank was a satisfaction and discharge of the mortgage, notwithstanding the fact that appellants continued as sureties for Moser on the note to the bank, and were subsequently compelled to pay it.

The mortgage, after reciting the borrowing of the money from Ballard, and the suretyship of appellants, says: "Now, in order to save R. J. Jarboe and C. P. Luckett

harmless in said suretyship, we have this day sold and mortgaged, . . ." etc. The question is, has this condition of the mortgage been complied with? Have Jarboe and Luckett been held harmless in the liability incurred for Moser upon the faith of the lien given them by the mortgage? While the original debt to Ballard was paid, appellants were not discharged from liability. On the contrary, they were compelled to incur a new liability to the bank in order to secure the funds with which to pay Ballard's executor, and were finally compelled to pay the debt to the bank. The contingent liability had now become a real one. It was held by this court in Burdett v. Clay, 47 Ky., 295: "When a mortgage is given to secure a particular debt, a change of the debt by taking a new note does not deprive the mortgagee of the benefit of the mortgage security, and the assignment of a note secured by a mortgage carries with it the mortgage lien, which is not destroyed by the renewal of the note to the assignee; nor was the security lost by the taking of a new note with personal security, or a second mortgage." And in Roberts v. Bruce, 91 Ky., 379; (15 S. W., 872), it was held "that when a surety, in order to enable the principal to raise the money to pay the debt for which he is bound, becomes surety to a new creditor, he is entitled, notwithstanding the change in the creditor, to retain any indemnity in his possession or under his control." In Banking Co. v. Leonard, 90 Ky., 106; (13 S. W., 521), it was held that a mortgage upon real estate for a certain sum, given to secure future advances, was valid. In Moore v Thompson, 100 Ky., 231; (37 S. W., 1042), it was held, "that where a maker of accommodation notes executes to the payee and his sureties a mortgage to indemnify them as his sureties and indorser, and upon the maturity of the notes they were renewed by

the accommodation indorser and all of the original securities except one, the name of the original principal being left off of the mortgage made to indemnify them, he was not released; it satisfactorily appearing that the new notes were given for the same debt." Brandt (Suretyship and Guaranty, section 188) says: "Where a mortgage is given for the indemnity of a surety, it remains valid for that purpose, notwithstanding the evidence of the debt or the instrument by which the surety is bound may be changed." And he illustrates the principle by a reference to Patterson v. Martin, 7 Ohio, 225, where it was held, "that a mortgage to secure accommodation indorsers on a note payable to a particular bank, and so described in the mortgage, is valid to secure the same indorsers, though that bank did not discount the note, and another bank discounted a similar note for the same purpose, with the same indorsers." In Jones, Mort. (5th Ed.), section 924, it is said: "No change in the form of indebtedness or in the mode or time of payment will discharge the mortgage. The mortgage remains a lien until the debt it was given to secure is satisfied, and is not affected by a change of the note, or by giving a different evidence of the debt." And in section 926 the same authority says: "Whether a new note shall be treated and have effect between the parties as a payment of the former one, for which is is substituted, will depend upon the purpose and understanding of the parties to the transaction, which may be determined by express agreement, or by the circumstances attending the transaction." The American & English Encyclopedia of Law (1st Ed., vol. 15, p. 870) says: "A mortgage lien will only be extinguished by payment or release, or by some act operating as an estoppel; and there-

Jarboe, et als., v. Shiveley, et als.

fore the continued existence of a mortgage remains unaffected by the substitution of a new note or bond, or by the giving of an instrument of a wholly different character to that of the original evidence of indebtedness, or even by the execution of a new note and mortgage, if the mortgage is left undischarged. So long as the indebtedness in fact remains, any change in the evidence of it shall not be allowed to prejudice the security." It may be stated as a general rule that a change in the form of a debt does not satisfy the mortgage given to secure it, unless it is so intended to operate. It can only be destroyed by the payment or discharge of the debt, or by release of the mortgage. This is a rule in equity sanctioned by many adjudicated cases. Mere form is disregarded. The substance only is considered. The appellants have never been discharged from the original liability, and there was no purpose or intention to waive the mortgage lien given to protect them by the mere change in the payee of the liability so incurred by them, and it does not necessarily have this effect. The circuit judge erred in sustaining the demurrer. Judgment reversed and cause remanded for proceedings consistent with this opinion.