LAWRENCE BRAINERD and NELSON C. WOOD, assignees, &c.
v. GEORGE E. DUNNING and J. S. SMITH.

A provision, in an assignment of property in trust for the benefit of credi-
tors, directing the payment of debts and liabilities due, or *to grow due*, if
intended to secure debts or claims not then in existence, but which are
afterwards to be created, either by the assignor or the assignees, would be
void.

But a clause directing the payment of debts, bonds, notes, bills and sums
of money due and to grow due, is not subject to such a construction. It
applies only to claims then in existence. Whether due or to grow due, is
immaterial.

A clause providing for the payment of all debts, &c. due to the assignees
from the assignor, " or for which he is liable, or may become liable to
them, including notes, bills and drafts indorsed and guarantied by them,"
&c., refers to such notes, &c., on which the assignees are indorsers or
guarantors, and on which the liability has not yet been fixed by protest—
claims which they may pay, or become liable to pay, by reason of indorse-
ments or other responsibilities which they have already made or incurred
for the assignor.

A direction for the payment of all debts, demands and sums of money for
or upon which, or on account of which the assignees, or either of them,
have become *or may be rendered liable*, for or on account of the assignor,
applies only to *past* debts, and not to new ones to be created, and vests
no discretion in the assignees. It only secures debts which have been
assumed, or on which the assignees may be rendered liable.

If the findings of a referee are imperfect, it is the duty of the party who is
not satisfied with them to apply for more specific findings, instead of seek-
ing to avail himself of such defects. In such cases the finding of facts
necessary to sustain the judgment will be presumed.

D. and S., the plaintiffs in an attachment suit, issued an execution therein,
without any directions to the sheriff not to levy on any particular pro-
perty; and were afterwards informed that the sheriff had levied on certain
lumber claimed by B. and W. as assignees of the judgment debtor, and
that a suit was threatened by B. and W. The attorney of D. and S.
refused to give the sheriff directions not to sell the lumber. D. and S.
knew the lumber was, advertised for sale under the execution, and they
afterwards received the proceeds of the sale, in payment of their execu-
tion.

*Held*, that these facts would have been on a trial before a jury, sufficient to
submit to them the question whether D. and S. had not by their acts, rati-
fied the taking of the goods by the sheriff, and the subsequent sale of
them to pay their claim.

*Held*, also that D. and S. having, with full knowledge of all the facts, and

without objection, received the proceeds of the lumber and applied them to their own use, this amounted to a ratification of the levy made by the sheriff, and made them liable to the real owner, for the property so sold.

THIS action was brought by the plaintiffs, assignees of Lawrence R. Brainerd, an insolvent debtor, to recover from the defendants the value of certain property assigned to them, and which was taken and sold by the sheriff under an attachment and execution issued upon a judgment recovered in their favor against Leonard R. Brainerd. The complaint charged the defendants with taking, carrying away and converting to their use the property. The defendants answered by a general denial, and a justification of taking the property of Lawrence R. Brainerd, under the attachment and sale under the execution, and they averred that they gave no directions to the sheriff in attaching or selling the property. It appeared on the trial, and the referee so found, that an attachment in favor of the Bank of Malone was issued on the 3d October, 1857, under which the property in question was attached by the sheriff on the 5th October, 1857, the property then being at Champlain Rapids. That on the 6th October, 1857, Brainerd made an assignment of all his property to the plaintiffs, for the benefit of his creditors. The assigned property was partly real and partly personal, and located in various places in this State and elsewhere. The assignees, on receiving the assignment, proceeded at once to take possession of the assigned property, and make the inventories. This occupied several days. Prior to the assignment being executed, an agreement was made with the bank, that they would abandon their attachment if an assignment was made prefering the debt due to the bank. The sheriff was informed of this by the attorney for the bank on the 12th October, and was informed of the same agreement by the assignees on the 6th October.

On the 6th of October an attachment was issued in the action in favor of the defendants, which was delivered to

the sheriff that evening, at a place some distance from where the goods were. The sheriff immediately annexed to the attachment a list of the goods attached previously at Champlain Rapids, under the attachment in favor of the bank, on the 7th of October. The sheriff went to Champlain Rapids and looked over the property. He afterwards informed the defendants he had taken the lumber on their attachment. A judgment was afterwards obtained in that action, and an execution issued on the 10th of November, 1857, under which the sheriff sold the attached property. The property was bought by the plaintiffs, who paid for it $109, and the sheriff paid the proceeds to the attorney. No directions were given by the defendants either to seize the goods under the attachment or to sell them under the execution, but both defendants and their attorney knew they had been seized under the attachment, and that the sheriff had advertised the lumber for sale under the execution. The plaintiffs gave notice of their claim as assignee, and the sheriff applied to the defendants for indemnity, which they refused, and told him to call a jury. He went on without such jury, sold the property, and paid over the proceeds to the defendants' attorney, who paid the same to the defendants. The referee found for the plaintiffs, and his judgment was affirmed, on appeal.

*A. J. Parker*, for the appellants

*Palmer & Armstrong*, for the respondents.

INGRAHAM, J.   Two questions have been submitted to us on this appeal.

1. Whether the assignment under which the plaintiffs claim, is not void for giving a preference for debts for which the assignor might thereafter become liable to the plaintiffs, or either of them.

2. Whether the defendants in any way directed an interference with, or did any acts making themselves liable for the acts of the sheriff in selling the property seized under the attachment.

(1.) The words of the assignment complained of are, "shall pay and discharge in full all debts, bonds, notes, bills and sums of money, due or to grow due to the parties of the second part, or either of them, from the assignor, or for which he is liable or may become liable, including notes, bills and drafts indorsed and guaranteed by them, &c., and · all debts, demands and sums of money for or upon which or on account of which they, or either of them, have become *or may be rendered liable* for or on account of the party of the first part." The objection made to this provision is that it includes drafts and liabilities not then in existence. If this provision was intended to secure debts or claims not then in existence, but which were afterwards to be created either by the assignor or the assignee, it would be void. This was settled in *Sheldon* v. *Dodge* (4 Denio, 217), where an assignment contained a provision giving a preference to debts which should thereafter become pressing, and for which *Dodge* should, as surety, become responsible; and the objection to it was that the instrument reserved to the assignee the power of declaring which of the debts in a certain class should become preferred, by agreeing subsequently to become liable therefor. This principle was previously settled in *Grover* v. *Wakeman* (11 Wend. 187), viz: that the assignment must declare who are to be preferred, and a reservation of that power either to the assignor or assignee rendered it void. (See also *Barnum* v. *Hempstead*, 7 Paige, 568.) But, as is said in the latter case by the Chancellor, I do not think that this clause of the assignment is subject to such a construction. It provides for the payment of debts, bonds, notes, bills and sums of money due and to grow due. This evidently applies only to claims then in existence; whether

due or to grow due was immaterial. It further provides "or for which the assignor was liable, or may become liable to them, including notes, bills and drafts endorsed by them." This evidently referred to such notes, &c., on which the assignees were endorsers or guarantors, and in which the liability had not yet become fixed by protest; claims which they might pay, or become liable to pay, by reason of endorsements or other responsibilities which they had already made or incurred for the assignor. (*Van Dine* v. *Willett*, 24 How. Pr. R. 206.) The remaining part of the clause is still less objectionable, as it provides for the payment of all debts, demands and sums of money for or on account of which they have become or may be rendered liable. This clearly applies only to past debts, and not to new ones to be created, and vests no discretion in the assignee. It only secures debts which have been assumed or on which they may be rendered liable. The instrument throughout bears a construction perfectly consistent with an honest intention; and as fraud is not to be presumed where the instrument is consistent with an honest intention, I see no reason for imputing a fraudulent intent to the parties in making this assignment.

I am unable to find in the case any evidence that this question was raised on the trial, or submitted to the referee, and there is no finding by the referee either of fact or law to which the defendants have excepted which properly raises this question. Even if there were doubts as to the assignment, I think the objection should have been taken below, to make it available in this court.

(2.) The other ground of appeal is that there are no facts in evidence to make the defendants liable for the levy made by the sheriff, if such levy was upon property belonging to the plaintiffs.

The referee held the defendants liable for acts occurring before the sale, as well as the receipt of the money after the sale, with full knowledge of the source from which the

money was obtained. We are asked by the appellants to confine ourselves to the finding of the referee in this case, and not to look into the testimony to see whether there is enough to sustain it.

The report of the referee is very imperfectly made up if it is intended as a substitute for findings of fact or law. But where the findings are thus imperfect, it is the duty of the party who is not satisfied with them to apply for more specific findings, and not seek to avail himself of such defects; and this court has held that in such cases the finding of facts necessary to sustain the judgment will be presumed.

But I think there is evidence enough in the case to warrant the submission of this question as one of fact. The defendants knew that the sheriff had levied on property claimed by the plaintiffs as assignees. They knew that a suit was threatened by the assignees. They issued the execution without any directions as to this lumber which the sheriff was by law required to sell and apply to the execution, unless otherwise directed. Their attorney refused to give the sheriff directions not to sell it. The defendants knew the lumber was advertised for sale under the execution, and afterwards they received the proceeds of the sale in payment of their execution. All these facts as found by the referee would have been, on a trial before a jury, sufficient to submit to them the question whether the defendants had not, by these acts, ratified the taking of the goods by the sheriff, and the subsequent sale of them to pay their claim. (*Judson* v. *Cook*, 11 Barb. 642; *Fox* v. *Jackson*, 8 Barb. 357.)

The case of *Wilson* v. *Tumman, et al.* (6 Manning & Gr. 236), relied on by the appellants, was one where the plaintiff did no act and was sought to be charged by proof that he had said he had a claim on the property, but nothing was done to the property by him or, so far as the case shows, by the sheriff, after that declaration. Without

expressing an opinion as to the agreement of this case with some of the decisions in this state on that question, it is enough to say that the present case differs very materially from the former, in that the plaintiffs in the execution, with full knowledge of all the facts, and without objection, received the proceeds of the property and applied them to their own use. Such receipt of the proceeds of the sale to their use on the execution, with the knowledge they possessed, is a ratification of the levy made by the sheriff, and makes them liable for the property so sold, to the real owner.

In *Freeman* v. *Ritchie* (13 Ad. & Ell., N. S. 780), the mere receipt of the money, without knowledge of the illegal taking, was held to be insufficient to make out a ratification of the seizure; but in that case the court recognize the distinction between the receipt of the money with the knowledge that a trespass had been committed, and taking it without such knowledge. In the former case it might amount to a ratification.

The judgment should be affirmed.

SELDEN, J., also read an opinion in favor of affirmance; and all the other judges concurring, judgment affirmed.