[Civ. No. 1057.   Third Appellate District.—April 4, 1913.]

ALBERT L. LANGERMAN, Respondent, v. THE PURITAN DINING ROOM COMPANY (a Corporation) et al., Defendants; W. R. GOODBODY et al., Defendants and Appellants.

MORTGAGE—SECURITY FOR FUTURE LOANS AND ADVANCES.—A mortgage to secure "all moneys due or hereafter to become due" to the mortgagee from a third person secures future loans and advances as well as existing indebtedness; the words "moneys due or hereafter to become due" are broader in their scope than the words "debts due or hereafter to become due."

ID.—DISCRETION OF MORTGAGEE TO MAKE FUTURE ADVANCES.—The fact that a mortgagee has discretion in making future advances does not require the mortgage to be interpreted as not covering future advances.

ID.—OPTION OR DISCRETION TO MAKE ADVANCES.—A mortgage to secure future advances is not invalid as between the parties, because the making of the advances is left to the option or discretion of the mortgagee.

ID.—ADVANCES MADE TO COMMITTEE OF CREDITORS.—Money borrowed from the mortgagee, under a mortgage to secure future advances, by a committee of the creditors of the mortgagor after they have taken control of his business in order to straighten it out, is covered by the lien of the mortgage.

ID.—PAYMENTS—APPLICATION TO OBLIGATIONS.—Where it is not shown that a debtor, at the time of making payments, manifested an intention that they should be applied to the extinction of any particular obligation, and it is not shown that the creditor did not make the application within a reasonable time after the payments, the debtor cannot invoke the rule governing the application of payments which is prescribed by subdivision 3 of section 1479 of the Civil Code.

ID.—CONSIDERATION FOR MORTGAGE—PAST INDEBTEDNESS.—Where a corporation becomes indebted to a bank for money borrowed for the

corporation by one of its shareholders holding sixty per cent of the stock, and the bank, after demanding payment or security therefor, extends the loan in consideration of the execution of a mortgage by the stockholder, and makes further advances on the faith of such security, the mortgage is not invalid as having for its consideration the past indebtedness of a third party.

ID.—FORECLOSURE PROCEEDINGS—FINDINGS.—In this action to enforce a mortgage securing future advances, the findings, although there is some ambiguity in the complaint respecting certain of the loans, are not inconsistent and contradictory, but are consistent with the theory contended for by the plaintiff and supported by the evidence.

ID.—ASSIGNMENT OF MORTGAGE—EXECUTION BY ATTORNEY IN FACT.— The assignee of a mortgage and the notes thereby secured is at least ostensibly the owner thereof, when the assignment has been made by the surviving attorney in fact of a foreign banking corporation, under a power of attorney given by its officers and authorizing both or either of two named agents to transact any business which might come within the scope of the banking business as fully as could the officers themselves.

ID.—EVIDENCE—PAROL TO SHOW MORTGAGE INTENDED TO COVER FUTURE ADVANCES.—Parol evidence is admissible to show whether a mortgage was intended to cover future advances.

ID.—ORAL AGREEMENT FOR MORTGAGE TO SECURE FUTURE ADVANCES.— An oral agreement between the mortgagor and the mortgagee to allow the mortgage to stand as security for additional advances to be made by the mortgagee to the mortgagor will be enforced in equity when there are no intervening rights of third persons to be prejudiced thereby.

APPEAL from a judgment of the Superior Court of Alameda County and from an order denying a new trial. William H. Waste, Judge.

The facts are stated in the opinion of the court.

P. L. Benjamin, for Appellants.

Lilienthal, McKinstry & Raymond, for Respondent.

HART, J.—As the alleged assignee of The Anglo-Californian Bank, the plaintiff brought this action to foreclose a mortgage, "alleged to have been executed by the defendants, W. R. Goodbody and Emily E. Goodbody, to secure the payment of two certain promissory notes, one for the sum of five thousand dollars, and the other for three thousand nine hundred

dollars, executed by the defendant, Puritan Dining Room Company, to said bank.'' The dining room company and the other defendants, other than the Goodbodys, failed to answer the complaint and judgment by default was thereupon entered against them. The Goodbodys answered the complaint, and, upon the issues raised by the complaint and said answer, a trial was had. Findings were filed and judgment rendered and entered in favor of the plaintiff and against the Goodbodys decreeing a foreclosure of the mortgage and a sale of the mortgaged premises.

The cause is brought to this court by the Goodbodys on an appeal from the judgment and the order denying them a new trial.

The complaint alleges that, ''on the 31st day of January, 1908, the defendant, The Puritan Dining Room Company, was indebted to the said . . . Bank . . . in the sum of $5,000.00, and that on said 31st day of January, 1908, the defendants, W. R. Goodbody and Emily E. Goodbody, to secure to said . . . Bank, . . . the payment of the said sum of $5,000.00, and any other and additional sums which might at any time thereafter be due and owing to said . . . Bank, . . . from said . . . Dining Room Company, or the defendant, W. R. Goodbody, or either of them, did execute to said . . . Bank, . . . a certain deed bearing date January 31st, 1908,'' and that, on the same day, said bank executed to the said W. R. Goodbody a defeasance, bearing date said 31st day of January, 1908, which said defeasance, as set out in the complaint in full, reads as follows:

''Whereas, by deed dated January 31st, 1908, W. R. Goodbody and Emily E. Goodbody, his wife, of Alameda County, California, conveyed to the undersigned certain property in the town of Berkeley, state of California, being a portion of lot number 4, in block 7, upon the map of the 'Property of the College Homestead Association,' which said deed was absolute in form;

''Now this indenture witnesseth, that said deed, although so absolute in form, was intended as security to said undersigned for all moneys due or hereafter to become due to said undersigned by said W. R. Goodbody or the Puritan Dining Room Company, and the undersigned agrees, upon the repay-

ment of said moneys, to reconvey to said W. R. Goodbody the property so conveyed as aforesaid.

"THE ANGLO-CALIFORNIAN BANK, LIMITED,
"By W. K. Cole,
"Branch Manager.

"Dated: January 31, 1908."

The complaint proceeds to allege that, on the fourth day of April, 1908, "there was still due, owing and unpaid to said . . . Bank, . . . by the defendant . . . Dining Room Company, the said sum of $5,000.00, and on said 4th day of April, 1908, the defendant, . . . Dining Room Company, executed and delivered to said . . . Bank, . . . its promissory note for said sum of $5,000.00, so due as aforesaid, in the words and figures following," here setting out the note *in haec verba.*

It is then averred that, on the twenty-second day of December, 1908, "while the said principal sum of $5,000.00 in said foregoing note, and all thereof, was still due and owing by defendant . . . Dining Room Company to said . . . Bank . . ., no part thereof having been paid, the defendant, . . . Dining Room Company, borrowed from the said . . . Bank, . . . the additional sum of $3,900.00, and on said 22nd day of December, executed and delivered to said . . . Bank . . ., its promissory note in words and figures," etc., here pleading said note in full.

The complaint further sets out in full the deed from the Goodbodys to the bank, showing the instrument to be absolute in form.

The answer of the Goodbodys alleges that the mortgage, "consisting of the deed and the defeasance, was executed simply and solely for the purpose of securing the payment of said sum of five thousand dollars mentioned in said paragraph 3 of said complaint and the interest thereafter to become due thereon, and for no other purpose whatsoever."

The court found that the dining room company (which, for brevity will hereafter be referred to as the company) was indebted to the bank in the sum of five thousand dollars on the thirty-first day of January, 1908; that on said date the Goodbodys executed the mortgage, consisting of a deed and defeasance, as set forth in the complaint, to secure the payment of said sum and such other additional sums as might thereafter be due and owing to the bank from the company or W. R.

Goodbody; that, between January 31, 1908, and December 24, 1908, the bank loaned the company other sums, and that between said dates said company paid to the bank "various sums of money on account of the said sum of $5,000.00, and said other and additional sums so borrowed as aforesaid," and that on December 24, 1908, there was owing to the bank by said company the sum of eight thousand nine hundred dollars, evidenced by two promissory notes—the one dated April 4, 1908, for five thousand dollars, and one dated December 24, 1908, for three thousand nine hundred dollars; that the sums of seven hundred and eighty dollars and seventy-eight dollars were paid on said indebtedness, evidenced by the notes mentioned, on July 12, 1909, and December 29, 1909, respectively, and that on April 9, 1910, the sum of fifty-eight dollars and fifty cents was paid on account of said indebtedness. (The two payments first above mentioned were made prior to the commencement of this action and the last payment was made after the action was brought.)

That the evidence does not justify the vital findings, is the principal contention of the appellants, but in support of that contention a number of different legal propositions is advanced and submitted for decision. The most important of these points, and which will first be considered, are: 1. That the mortgage was given solely for the purpose of securing the payment of the indebtedness of five thousand dollars due from the company to the bank on the thirty-first day of January, 1908, and in this connection it is argued that, "to make the mortgage security for future loans or advances, it was necessary that there should have been, at the time the mortgage was made, an express agreement for a future loan or advance," and that no such agreement was shown to have been made. 2. That, inasmuch as the note for three thousand nine hundred dollars was given by the company while the latter was under the control of the creditors' committee and thus managed, as is the contention, solely for the benefit of the creditors, it cannot be maintained that the mortgage in any event may be held as security for the payment of said note, the contention being that the loan evidenced by said note was negotiated and obtained by the creditors for their own and not for the company's benefit, or, in other words, that the creditors and not the company borrowed the money.

21 Cal. App.—41

Other points presented and to be considered will be stated hereafter.

In the outset, we may just as well declare it to be our opinion that the findings are amply supported by the evidence, and that the judgment is invulnerable as against any of the objections upon which the appellants base their insistence upon its reversal.

1. As has been shown, the defeasance provides that "said deed, although absolute in form, was intended as security for *all* moneys due *or hereafter to become due*" to the bank "by said W. R. Goodbody or the Puritan Dining Room Company," and that the bank "agrees, upon repayment of said moneys, to reconvey to said W. R. Goodbody the property so conveyed as aforesaid."

The solution of the question whether said deed or mortgage was intended, at the time of its execution, to cover indefinite future advances must rest upon the ascertainment of the meaning with which the parties intended to impress the words "all moneys due or *hereafter to become due,*" as used in the defeasance.

Counsel for the appellants contends that those words are the equivalent, in signification, to the phrase, "debts due or hereafter to become due," and imply, as the latter expression has been held to mean, debts already contracted, or in existence at the time of the execution of the mortgage, whether matured or unmatured. (See *Thomas* v. *Gibbons,* 61 Iowa, 50, [15 N. W. 593] ; *Brainerd* v. *Dunning,* 30 N. Y. 211, 214, *In re Havenor,* 70 Hun, 56, [23 N. Y. Supp. 1092] ; *Van Hook* v. *Walter,* 28 Tex. 59; *Barnum* v. *Hemstead,* 7 Paige's Ch. (N. Y.) 568.) These cases hold that the words "debts due or hereafter to become due," as applied to garnishment statutes and assignments for the benefits of creditors, referred to debts, matured or unmatured, actually in existence at the time of the execution of the garnishments or such assignments.

We are, however, inclined to the view that the expression "moneys due or hereafter to become due" is broader or more extensive in its scope than the phrase "debts due or hereafter to become due," particularly as applied to the present case. A debt, whether legally enforceable at the present time or at some future time, constitutes an existing obligation, and when

we refer to a *debt* we at once understand thereby that thus there is resting upon some one an obligation to pay money to another when the time fixed by the parties, or by law, for its payment has ripened.   It is, in other words, a thing which actually exists and is characterized by certainty and definiteness, and, therefore, when a written instrument or a statute uses the phrase, "debts due or hereafter to become due," reference is ordinarily understood to be expressly made to an existing obligation, and whether it is matured or unmatured at the time of the execution of the transaction from which it arises or to which it relates is immaterial, as that fact is not a constituent of the mere debt or obligation itself.   But, after all, even as to that and other like expressions as used in a written contract or a statute, the final test for the determination of the meaning thereof is in the *intention* with which they are so employed and this intention must be gathered not only from the connection in which but the circumstances under which they are so used.   For illustration, in such a case as *Thomas* v. *Gibbons,* 61 Iowa, 50, [15 N. W. 593], where the words "debts due or hereafter to become due" in a statute prescribing what moneys of a debtor in the possession of a third party may be the subject of garnishment, the court very properly held that that language of the statute meant those debts actually due or any subsisting debts not due at the time of the garnishment, and that debts created *after* the garnishment had been served were not included within the purview of the statute.   So, in the case of an assignment for the benefit of creditors, the court, in *Brainerd* v. *Dunning,* 30 N. Y. 211, held that the provision in the assignment that the assignee should discharge, out of the assets of the insolvent debtor, all claims "due or hereafter to become due" against the debtor, referred to debts existing at the time of the assignment and not to liabilities created by the debtor after the date of the assignment.   But it is not difficult to conceive of cases in which there might exist or be shown insurmountable reasons for giving those very same phrases a much broader interpretation than that to which they are necessarily restricted in the cases referred to.   At any rate, as before stated, we are of the opinion that the expression with which we are concerned, "moneys due or hereafter to become due," was intended to bear a much more elastic meaning than the phrases

construed in those cases naturally imply. We do not say that the phrase used in the mortgage involved here may not include an unmatured debt created contemporaneously with the execution of the mortgage. Undoubtedly it may imply such a debt, for, manifestly, ''moneys hereafter to become due'' may refer to moneys to become due on an obligation existing but not matured at the time the security is given. But what we intend to hold is that it is strictly correct to say that the phrase may also contemplate and include moneys which have not been but which in the future may be advanced, at the option of the mortgagee, in the case of a mortgage, and in this view we are sustained by a number of the cases. (See *London, Paris & American Bank* v. *Smith*, 101 Cal. 415, [35 Pac. 1027]; *Citizens'. Savings Bank* v. *Knock*, 117 Mich. 225, [75 N. W. 458]; *Michigan Ins. Co.* v. *Brown*, 11 Mich. 265; *McDaniels* v. *Colvin*, 16 Vt. 300, [42 Am. Dec. 512]; Jones on Mortgages, sec. 373.) That it was in this sense that the phrase was used in the present case, is clearly implied from the fact that the language is general and refers to no specific indebtedness. It must, of course, be presumed that the expression or phrase was intended by the parties to bear some substantial or material signification—that is, that it was intended to perform an important part in defining the conditions or scope of the contract and the rights of the parties thereunder, as they were understood by said parties when the mortgage was given. It is admitted that there was in existence, at the time of the execution of the security, but the single indebtedness of five thousand dollars to mature or become due, if it was not already due. Therefore, what necessity could there have been or what purpose could have been subserved by the insertion in the defeasance of a provision as to any other indebtedness than the said five thousand dollars, if the truth is that the parties did not contemplate that there might be created in the future an additional indebtedness for which the mortgage should stand as security as well as for the existing debt? If the said five thousand dollars' indebtedness constituted the sole indebtedness for which the mortgage was intended to be security, why did not the defeasance so provide and declare that the security was intended solely for that specific indebtedness? These questions cannot be answered consistently with the contention of the appellants unless we are prepared to hold that the words

"hereafter to become due" were intended to bear absolutely no meaning whatever, and this we are not at liberty to do.

But, if there be discerned any substantial reason for imputing ambiguity to the phrase itself (and, as previously declared, we do not think that there is), such reason must entirely disappear upon a consideration of the testimony addressed to that point.

The fact is not disputed that the bank did advance to the company, after the security was given, other moneys than that which had been advanced before the mortgage was executed.

The witness, W. K. Cole, who was the manager of the Mission Street branch of the bank, and with whom W. R. Goodbody, either in person or by his agent, Laura Palmer, conducted all the financial transactions involved here, testified that it was expressly agreed and distinctly understood by the Goodbodys, at the time the mortgage was executed, that it should stand as security not only for the indebtedness existing when the instrument was made, but also for any future advances which the bank might make.  He further testified to conversations with Goodbody, Sr., held after the execution of the note for three thousand nine hundred dollars, in which the latter at least tacitly admitted it to be his understanding that the mortgage should operate as a continuing security for such future advances as the bank might make to the company from time to time.

The plaintiff also testified that, subsequent to the giving of the mortgage, W. R. Goodbody stated to him that the mortgage was intended as security for future loans.

Opposed to this testimony is that of W. R. Goodbody and Laura Palmer, who denied that the mortgage was intended to have the effect claimed for it by the plaintiff, and it is claimed that these witnesses are supported by the following circumstances, viz.: 1. That, in the payments of monthly interest to the bank, the sum so paid by Goodbody each month, corresponded in amount with the sum due as interest on a five thousand dollar loan at the rate of interest called for by each of the notes.  2. That the bank, as to the note for three thousand nine hundred dollars, having participated in the settlement of the affairs of the company by the creditors' committee, and agreed to accept dividends from the creditors' committee

in payment of said note, treated the latter transaction as not having been covered by the mortgage, and it is, therefore, argued that such action on the part of the bank as to said note is evidence that it was not the intention of the parties that the mortgage should stand as security for its payment.

The effect of the testimony of Goodbody, Sr., and Laura Palmer is merely to raise a conflict upon the point, and, as to the circumstances mentioned, Cole explained that, as the mortgaged property was of no greater value than six thousand five hundred dollars, it was agreed between him and the Goodbodys, after the company went into the hands of its creditors, that it would be better for all parties to treat the three thousand nine hundred dollar note as unsecured, so that the bank could participate in the creditors' settlement of the affairs of the company and so pay that note, in whole or in part, from the dividends returned to the creditors by the committee thereof having charge of the company. He further explained that for the same reason the bank accepted from Goodbody interest on the five thousand dollar note, only. This testimony by Cole is supported, in a measure, by a letter addressed to the bank and signed by both the mortgagors, W. R. and Emily E. Goodbody. The letter reads: "Referring to our deed to you dated January 31, 1908, we authorize and request you to participate in the settlement now pending in the San Francisco Board of Trade between the Puritan Dining Room Company and its creditors, or some thereof; that is to say, we authorize and request you to treat your claim as unsecured to the extent of three thousand nine hundred dollars and to accept dividends upon your claim on that basis, and to look to the property conveyed to you by us for the balance of your claim against said Puritan Dining Room Company.". That letter was dated December 7, 1908—14 days prior to the date of the execution of the note for three thousand nine hundred dollars—and it not only strongly implies that it was the intention and understanding of the Goodbodys that the mortgage should cover that sum of money, but also involves an admission by the Goodbodys that said sum of three thousand nine hundred dollars was a part, and only a part, of the total indebtedness due to the bank from the company before the execution of the note by which that portion of said indebtedness was evidenced.

But counsel seems to perceive some inconsistency between the claim that the mortgage was intended as a continuing security to cover future advances as well as an existing indebtedness and the testimony of Cole to the effect that the additional loan evidenced by the April note for five thousand dollars was made with considerable hesitation by the bank, and that the officials of the latter questioned the sufficiency of the mortgaged property to safely secure an additional loan. But we are inclined to view the testimony relative to the application for the additional loan referred to and the final action of the bank with respect thereto rather as in support of the plaintiff as to the scope of the mortgage than as tending to negative the claim that the security was intended to cover future advances as well as an existing indebtedness. The natural inference from the circumstance would appear to be that some understanding had previously been had for future advances. But, however that may be, it is very clear that a mortgagee may stipulate in the mortgage to make future advances to be covered thereby, and still, if, as is true here, he is vested with a discretion whereby he is at liberty to make or refuse them according as his judgment my suggest, he is not compelled to advance further sums to the mortgagor, and his refusal to do so or the mere taking of the matter under consideration does not constitute, *per se,* a reason justifying the interpretation that the mortgage was not intended to cover future advances. Even though the making of the advances was left to the option or discretion of the mortgagee, the mortgage constituted, as between the original parties, a valid security. (27 Cyc., p. 1070; *Madigan* v. *Mead,* 31 Minn. 94, [16 N. W. 539]; *London, Paris & American Bank* v. *Smith,* 101 Cal. 415, [35 Pac. 1027].)

Upon this branch of the case we feel fully persuaded, from a consideration of the language of the defeasance by the light of the circumstances attending the several transactions between the bank and the company, that the mortgage was given with the intention of securing any indebtedness from the company to the bank, whether in existence at the time of its execution or created thereafter.

2. The contention that the three thousand nine hundred dollar note above considered represented money borrowed by the committee of creditors solely for the benefit of the cred-

itors, and that the company took no part and had no interest in the negotiation and securing of the loan, grows out of the following situation of the affairs of the company: In the month of August, 1908, the company, having drifted into serious financial difficulties, was taken charge and possession of by the Board of Trade and by that organization placed in the hands of a committee of the creditors of the concern. Of this committee, William K. Cole, manager of the Mission branch of the bank, and who, as seen, carried on, in behalf of the bank, the financial transactions with the company, was made chairman. The company's business was conducted by said committee from the time mentioned until it was sold, which sale occurred some time after the note for three thousand nine hundred dollars was given to the bank. When the committee took possession of the company and its business, W. R. Goodbody was superseded as president thereof by his son, William R. Goodbody, and one Winter was made secretary thereof. A man named Pollak was made manager of the company by the committee, and he employed W. R. Goodbody as buyer for the restaurant, the latter during all this time still retaining ownership of sixty per cent of the stock of the company.

The specific claim is, as is above suggested in a general way, that it is thus made to appear that, if any money was borrowed from the bank to be used in the maintenance or prosecution of the business of the company after the creditors took charge thereof and were conducting it, such loan was made to the creditors themselves, or to the committee representing them, for their own use and benefit, and that such loan cannot, therefore, be charged against the company so as to bring it within the operation of the lien of the mortgage.

In the first place, it cannot be held to be true that the creditors took charge of the company and conducted its business for their sole benefit. The object of the creditors in taking possession of the corporation and in carrying on its business was to straighten out its affairs and place it, if possible, upon a paying basis. Of course, the creditors had their own interests in view, but at the same time they were necessarily endeavoring to conserve and protect the interests of Goodbody and the other stockholders. Indeed, in thus looking out for their own interests the creditors were, of course, only safe-

guarding the interests of the company and its stockholders, for the extinguishment of the claims of the former, either in whole or in part, from the profits of the business, must of necessity have redounded to their benefit.   Moreover, the corporation was the identical entity or, legally speaking, precisely the same "person" that it had been at all times and was at the date of the execution of the mortgage, and if, as we have held to be true, said mortgage was intended to cover all future advances made to it by the bank, we cannot see that, merely for the reason that the corporation, still owned by the same parties, had been placed under the management of parties other than its owners who managed it at the time the mortgage was given, could have the effect of destroying the liability of the mortgagors as sureties for the repayment of such advances.   However, assuming that there is some force in the point that loans made to the company after the latter went into the possession and control of the creditors are to be treated as loans made to the creditors and not to the corporation itself, or that in any event the mortgage cannot justly or legally be held to cover advances made to the corporation after it had gone out of the management, temporarily, of the owners of its stock, a conclusive reply to the contention under consideration is to be found in the testimony of W. K. Cole and the findings of the court largely founded thereon.

Cole testified that all the financial transactions which were had between the bank and the company occurred between the twenty-eighth day of January, 1908, and April 21, 1909, and they were as follows, all taking place in the year 1908: Debits: January 28, existing indebtedness, $5,000.00; March 5, $1,500.00; March 12, $2,500.00; April 4, $5,000.00; December 24, $3,900.00.   Credits: February 14, $2,600.00; April 6, $1,000.00; May 4, $500.00; May 22, $1,000.00; December 9, $1,992.94; December 24, $1,907.06.

In the foregoing statement of the financial transactions of the parties, two important and significant facts will be noted: 1. That, except as to the sum of three thousand nine hundred dollars, evidenced by the note of December 24th, there is no evidence or indication of any money having been advanced to the corporation after the fourth day of April or subsequent to the time—August 12, 1908—at which the concern was delivered over to the possession of its creditors and given into

the management of the creditors' committee. 2. That, on the twenty-fourth day of December, 1908, when the note for three thousand nine hundred dollars was given, the company is credited with a payment of $1,907.06, which circumstance strongly corroborates, if, indeed, it does not absolutely confirm the testimony of Cole that the last mentioned note was given, not for money then advanced, but in adjustment or settlement of the accounts. (It may here be explained that, while the complaint alleges that said note was executed on the twenty-second day of December, the note itself and the evidence show that it was, in fact, executed on the twenty-fourth day of that month.)

Testifying, Cole said: "The dining room company did not borrow any money after Goodbody, Junior, became president, *only for paying and reducing these other notes*. Looking at my transcript of the ledger account of the notes, I state that on the morning of April 4th, 1908, there was due from 'the dining room company to my bank $5,400.00. At the conclusion of business on the 4th, we loaned them $5,000.00. They then owed us $10,400.00. We loaned them $5,000.00 new money on the 4th of April, before which time they owed us $5,400.00, making it they owed us $10,400.00 on April 4th. I have already testified that on the 12th of August they owed us $8,900.00." After explaining the transaction whereby the bank advanced to the company the additional five thousand dollars on the fourth day of April, 1908, Cole was asked: "Recalling all these facts, you knew on December 24th, 1908, did you not, that the Puritan Dining Room Company could not pay more than a few dollars to its creditors?" Ans.: *"We did not loan them any more money*. That is what I tried to state this morning." Q. . . . "You being the chairman of the committee of creditors, you had something to do with the making of the loan?" (referring to the note for three thousand nine hundred dollars of December 24, 1908.) Ans.: *"It was not new money*. It wasn't new money. No, sir. You bet it wasn't. *It was money they owed us*. *It was in the way of adjusting their old notes*. There is no question about that."

This testimony stands in the record uncontradicted and, while there is no specific finding with respect to the proposition to which it is addressed, the finding that the mortgage was

given as security for both the pleaded notes necessarily implies that the trial court accepted the testimony of Cole as involving the truth of the three thousand nine hundred dollar transaction, and that finding, supported, as it is, by evidence credible upon its face, is binding upon this court.

We are now brought to the consideration of the remaining points.

3. The conclusion at which we have arrived respecting the scope and effect of the language of the defeasance answers the contention that there was no agreement made as to future advances at the time of the execution of the mortgage, and this proposition may, therefore, be dismissed without further consideration.

4. It is declared that, according to the court's findings, the five thousand dollar note of April 4, 1908, was fully paid before the alleged assignment of the notes described in the complaint to the plaintiff, and hence the assignment as to said note is void or of no effect. But the court does not find, as appellants contend, that the payments made to the bank by the company were alone applied upon the five thousand dollar note. The finding in that regard is that "between the said 31st day of January, 1908, and the 24th day of December, 1908, the said . . . Company paid to the said . . . Bank various sums of money on account of the said sum of $5,000.00 and said *other and additional sums so borrowed as aforesaid,*" etc. Cole testified that the payments so made were not made upon any particular loan, but on the balance remaining due on the whole of the running account. This account against the company consisted, as before shown, of numerous loans of which those evidenced by the two notes mentioned in the complaint constituted the balance, all the loans having been secured, as seen, prior to the twelfth day of August, 1908. But it is further contended that the testimony does not show that either the debtor or creditor made any express application of the payments made, and that, therefore, there being more than one obligation, the payments should have been applied to the extinction of the five thousand dollar note of April 4, 1908, as "the obligation earliest in date of maturity." (Civ. Code, sec. 1479, subd. 3.) According to Cole's testimony there were, after the mortgage was executed for the security for the five thousand dollar indebtedness, a number

of loans in various amounts made by the bank to the company and a number of payments made by the latter.   Upon an adjustment of the whole account, it developed that, in addition to the sum of five thousand dollars evidenced by the note of April 4, 1908, the further sum of three thousand nine hundred dollars—whether the balance remaining due upon some other note or not evidenced by any note at all, does not appear—was due the bank, and thereupon the note for the latter sum was given.   So far as we are advised by the record, the payments or some of them might have been applied to the payment of the first note given by the company to the bank, viz.: the note for five thousand dollars executed and delivered to the bank by the company concurrently with the execution and delivery of the mortgage, on January 31, 1908.   But, at all events, the moneys paid in were manifestly applied to the extinction of an indebtedness of which the sum of three thousand nine hundred dollars represented by the note set out in the complaint for that sum was the balance.   And the fact that the company manifestly accepted the adjustment of the whole account by executing and delivering the three thousand nine hundred dollar note to the bank is a circumstance from which the inference is clearly deducible that the manner of the application of the payments was assented to by the company and the Goodbodys.   Morever, it is not made to appear that, at the time of the payments, the company expressed or manifested to the bank an intention or desire that they should be applied to the extinction of any particular obligation, nor does it appear that the bank did not make the application "within a reasonable time" after the payments, and we think it was incumbent upon the company or the appellants to have made this showing in order to entitle them to invoke the rule enunciated by section 1479 of the Civil Code.

5. It is next contended that the mortgage, having been given to secure a past indebtedness of a third party, is not supported by a consideration.   This contention cannot be maintained. The evidence, as we have seen, shows that W. R. Goodbody was the owner of sixty per cent of all the stock of the company; that the company was indebted to the bank in the sum of five thousand dollars, which was borrowed for the corporation by Goodbody; that said money was due and payable and that the bank demanded either its payment or security therefor;

that the bank thereupon agreed to and did extend the loan upon and in consideration of the execution of the mortgage and, furthermore, agreed to and did make additional advances on the faith of said security.   The mortgage does not specify any particular note of any particular date for which it was to stand as security, but, as seen, covers all moneys due or hereafter to become due from the company to the bank, and this provision would include moneys advanced and evidenced by a note or moneys advanced and not evidenced by a note. In short, it was given to secure any existing and any future indebtedness, whether evidenced by a writing or not.   (See *London & San Francisco Bank* v. *Bandmann,* 120 Cal. 220, [65 Am. St. Rep. 179, 52 Pac. 583] ; and opinion of Mr. Justice Shaw in *McDonald* v. *Randall,* 139 Cal. 254, [72 Pac. 997].)

The case of *Chaffee* v. *Brown,* 109 Cal. 211, [41 Pac. 1028], which is cited and relied upon by the appellants to support the point under consideration, has no application to the facts disclosed by the record here.   There the wife mortgaged her separate property to secure an antecedent individual indebtedness of her husband, no new note or new promise having been given or made, and, as Mr. Justice Shaw, in *McDonald* v. *Randall,* 139 Cal. 254, [72 Pac. 997], says of the result reached in that case: ''The mortgage was given by the wife on her separate property a considerable time after the debt had matured, and not in consequence of any threat to sue, nor in consideration of any extension of time or other benefit or detriment to either of the parties. . . . The case was nothing more than an application of the familiar principle that where a debt has been already created the entering into an obligation to pay the same by a third person, as surety, after the creation of the debt, and without any new consideration, *such as delay or extension of time,* it is not an obligation upon the surety.''

There are other cases cited by appellants upon the question of consideration, but, like the case of *Chaffee* v. *Brown,* they are as to the facts readily to be differentiated from the present case.

6. A careful analysis of the findings has not convinced us that they are inconsistent and contradictory.   It must be admitted that there is some ambiguity in the complaint respect-

ing certain loans made prior to the execution of the note for
three thousand nine hundred dollars. The complaint alleges
that, at the time of the execution of the mortgage, and prior
thereto, the company was indebted to the bank in the sum of
five thousand dollars. It is then alleged that, on the fourth
day of April, 1908, "there was still due, owing and unpaid
to said . . . Bank . . . by the defendant . . . Company the
*said* sum of $5,000.00, and on said 4th day of April the de-
fendant . . . company executed and delivered to said . . .
Bank . . . its promissory note for *said* sum of $5,000.00 so due
*as aforesaid,*" etc. From this allegation the inference is very
forceful that the note executed on the fourth day of April was
for the purpose of evidencing the indebtedness alleged to have
been due at the time the mortgage was given. The case, how-
ever, appears to have been tried upon the theory that the five
thousand dollar note of April 4th was for money loaned the
company on that day and in addition to the original indebted-
ness of five thousand dollars, which "was due, owing and un-
paid" at that time. And the uncontradicted testimony of
Cole supports that theory. He testified: ". . . Looking at
my transcript of the ledger account of the notes, I state that
on the morning of April 4th, 1908, there was due from the
. . . Company to my bank $5,400.00. At the conclusion of
business on the 4th, we loaned them $5,000.00. They then
owed us $10,400.00. We loaned them $5,000.00 new money
on the 4th of April, before which time they owed us $5,400.00,
making it they owed us $10,400.00 on April 4th." Some of
this testimony might not have been clearly within the issues
made by the complaint, yet it was not objected to and, indeed,
as stated, the theory of both sides at the trial seems to have
been that the original indebtedness of five thousand dollars—
that is, the debt due when the mortgage was given—was not
in issue, but that the sole question to be tried was, so far as
loans were concerned, as to the loan made on April 4th and
evidenced by the note of that date, and the note executed on
the twenty-fourth day of December, 1908. That such was the
theory upon which the case was tried is shown, on the part of
the plaintiff, by the testimony to which reference has been
made, and, as to the appellants, by a statement by their at-
torney, Mr. Benjamin, during the trial. The latter, having,
on the cross-examination of Cole, asked some questions rela-

tive to the original indebtedness, stated that, as "the note itself, January 31st, 1908, does not cut any figure in this case," his sole purpose in inquiring about the original debt was merely to test the memory of Cole as to conversations which he claimed to have had with Goodbody, Sr., concerning the transactions generally between the bank and the company. And it was upon that theory and the evidence supporting it that the court framed its findings, viz.: That on the thirty-first day of January, 1908, the defendant company was indebted to the bank in the sum of five thousand dollars, and that on that day the Goodbodys executed and delivered to the bank a certain deed as security for said sum of five thousand dollars "and any other and additional sums which might at any time thereafter be due and owing to said" bank from said company or W. R. Goodbody, or either of them; that, "subsequent to the 31st day of January, 1908, and between the said date and the 24th day of December, 1908, the said . . . Bank . . . loaned to the defendant . . . company *various other sums in addition to the said sum of $5,000.00,* which was due from the said . . . Company to the said . . . Bank . . . on the said 31st day of January, 1908," and then follows a finding that the company, between the thirty-first day of January and the twenty-fourth day of December, 1908, paid to the bank various sums of money "on account of said sum of $5,000.00, and *other and additional sums so borrowed as aforesaid,* and that, on the 24th day of December, 1908, there was due and owing from said . . . Company to the said . . . Bank . . . the sum of $8,900.00, which said sum was evidenced by two promissory notes in the words and figures following," and then follow the notes for five thousand dollars and three thousand nine hundred dollars, respectively, and dated April 4, 1908, and December 24, 1908, respectively.

The foregoing findings are obviously consistent with the theory, as contended for by the plaintiff and as supported by the evidence, that there was an existing indebtedness in favor of the bank and against the company in the sum of five thousand dollars when the mortgage was given; that, subsequently, the bank advanced to the company other sums, making in all, after deducting credits, an indebtedness of ten thousand four hundred dollars on the fourth day of April, 1908, which included the five thousand dollars in "new money" advanced

on that day, and evidenced by the note of that date; that other payments were made by the company so that the total indebtedness, at the time of the trial, aggregated the sum of $7,183.50 and accumulated interest.

7. It is further objected that neither of the notes declared upon was ever assigned by the payee thereof to the plaintiff. We need not repeat the argument advanced in support of this point. It is sufficient to say that, in our opinion, the plaintiff became the owner—at least ostensibly so—of the notes and the mortgage by a legal assignment executed by a party vested with plenary authority to execute it in behalf of the bank. It appears that the bank was a corporation organized under the laws of Great Britain and that the English officers thereof in due form executed a power of attorney to Ignatz Steinhart and Philip N. Lilienthal, specifically authorizing and empowering both or either of them to transact any business which may come within the scope of a banking business as fully as could the officers themselves. Lilienthal died and Steinhart, as the sole attorney-in-fact, executed and made the assignment of the notes and mortgage involved here to the plaintiff, who is the secretary of the Anglo and London Paris National Bank, engaged in business in the city of San Francisco, and with which the Anglo-Californian Bank, Limited, consolidated. We can see no legal objection to the assignment.

8. It is lastly contended that the court erred in receiving, over the objection of the appellants, parol testimony in exposition of the intention of the parties with respect to the scope of the mortgage. The witness Cole was allowed to state the substance of conversations held with Goodbody, Sr., subsequent to the execution of the mortgage, in which the latter expressed it to have always been his understanding that the mortgage was intended to cover future advances. Like objection is made to the action of the court in allowing the plaintiff to give similar testimony.

The specific objection to this testimony is that its effect was to vary the terms of a written instrument by parol and likewise to extend the security of the mortgage, contrary to the mandates of section 2922 of the Civil Code. We cannot accept that view of the testimony.

Even an oral agreement between a mortgagor and a mortgagee to allow the mortgage to stand as security for additional

advances to be made by the mortgagee to the mortgagor will be enforced in a court of equity, where there are no intervening rights of third persons to be prejudiced thereby. (27 Cyc., p. 1070, and cases cited in the footnotes.) And, in section 367a of Jones on Mortgages, it is said that, "though the mortgage on its face is for a specific sum of money, parol evidence is admissible to show that it was really intended to secure future advances to be made from time to time." (See *Shirras* v. *Caig,* 7 Cranch, 34, [3 L. Ed. 260]; *McKinster* v. *Babcock,* 26 N. Y. 378; *Wilkerson* v. *Tillman,* 66 Ala. 532; *Louisville Banking Co.* v. *Leonard,* 90 Ky. 106, [13 S. W. 521].)

The mortgage in this case makes no mention of a specific sum of money, but, as seen, provides that it shall stand as security for "all moneys due or hereafter to become due," and if that language might be viewed as of dubious or doubtful meaning, it would clearly be competent to explain its meaning by parol testimony, and the effect of such proof would not be to vary the terms of the mortgage or to extend the security.

Under our construction of the language of the defeasance, it was wholly unnecessary to establish by extrinsic proof that the mortgage was intended to cover and secure future advances and that it was so understood by the parties when the instrument was executed and delivered. Therefore, parol testimony tending to establish that fact, being in harmony in that regard with the manifest purport of the defeasance upon its face, cannot be held to have operated prejudicially to the rights of the appellants. And in this view, the suggestion that the extra-judicial admissions of W. R. Goodbody, in the absence of his wife, who is a joint mortgagor with him, cannot bind her, is without force.

No substantial reason having been assigned for remanding the cause, the judgment and order are affirmed.

Chipman, P. J., and Burnett, J., concurred.