## In re KELLY.

### No. 46164.

United States District Court
S. D. California, C. D.
Aug. 18, 1949.

Hugo A. Steinmeyer and Alfred T. Twigg, by Alfred T. Twigg, Los Angeles, Cal., for the Bank of America National Trust & Savings Ass'n.

Craig, Weller and Laugharn, by Hubert F. Laugharn, Los Angeles, Cal., for the trustees.

Rogers & Rogers, by Burton L. Rogers, Ventura, Cal., for Mrs. Lois Bottomfield.

YANKWICH, District Judge.

The petition of Bank of America National Trust and Savings Association to review the order of the Referee dated June 1, 1949, limiting the right of the bank to the proceeds of the sale of certain real estate to the sum of $10,000, heretofore argued and submitted, is now decided as follows:

The said order of the Referee is reversed, with direction to the Referee to entertain such further proceedings as may seem meet in the premises—failing which, the bank's lien upon the funds to the full extent of the advance is to be allowed.

### Comment

[1] Where the Referee hears different versions of a transaction and draws his inferences from them, or where he draws inferences from contradictions in the testimony of one witness, his findings based thereon are entitled to full weight. See memorandum decision, In re Great Western Biscuit Co., D.C., 85 F.Supp. 314; Yankwich, Findings, 1948, 8 F.R.D. 271, 288.

However, when his conclusion is based upon an inference drawn from undisputed facts or upon his interpretation of an instrument, it is not binding on review. See my opinion in Re Alberti, D.C.1941, 41 F.Supp. 380.

The Referee here found, in substance, that the Bottomfield subordination agreement was obtained upon the representation that the trust deed of the bank dated December 3, 1946 covered the note of the same date in the sum of $10,000, and no more.

■ I find no testimony in the record to support these findings.

Lois Bottomfield was not a witness at the hearing. Burton L. Rogers, her attorney, attempted to testify to a conversation had with Walter Quam, Assistant Cashier at the Ventura Branch of the Bank, but an objection was sustained by the Referee upon the ground that it was an attempt "to alter or modify the terms of a written instrument."

It would seem that the witness intended to testify to a mere negative, i. e., that he was not informed of the actual extent of the indebtedness. However, if the intention was to show a positive representation, the testimony would be admissible.

■ It is true, as stated by the Referee, that preliminary negotiations cannot modify a written instrument. However, a mistake or fraud which induces another to execute an instrument is ground for relief in equity. See my recent opinion, sitting in the Circuit Court, U. S. v. Jones, 9 Cir., 176 F.2d 278; Cal.Civil Code, secs. 1577, 3399, 3400, 3401; Central Mfrs. Mut. Ins. Co. v. Jim Dandy Markets, D.C.Cal.1948, 77 F.Supp. 171.

And Mrs. Bottomfield should be permitted to show, if she can, that a representation was made to her or her attorney, as her agent, that the subordination was to be for only the face of the bank's note.

Indeed, the Referee having allowed the witness Quam to answer in the negative a question to the effect that the subordination was to be only to the extent of $10,-000, the attorney should have been allowed to contradict this statement or give his version of the conversation.

I believe the difficulty arose from the fact that the attorney was a witness in the case and did not have anyone propound questions to him. Such a situation often gives rise to rulings which would not have been made had the examination proceeded in the usual manner.

The upshot of the matter is that the only testimony in the record relating to any representation is negative. We quote from the examination of Mr. Quam:

"Q. You have no recollection of advising me that the balance, the amount on that note was $10,000, and the subordination agreement was to be that Mrs. Bottomfield's note, a deed of trust, would be subordinate to the extent of $10,000? A. No. The thing was, Mr. Kelly had an estimate on a cost plus basis on the building. His cost exceeded the estimate substantially.

"Q. The building was completed when this deed of trust was made, is that right? A. That is right. It couldn't be recorded before, but it was necessary to extend Mr. Kelly more credit in order to bring the building to completion."

There remains in the record, as a basis for the findings of the Referee, the written instruments and the inferences which he drew from them. On this point, I am of the view that the Referee did not interpret correctly the instrument of subordination, Exhibit 7. That instrument subordinated the Bottomfield deed of trust to that of the bank.

The reference at the end of the instrument to the amount of the note was merely descriptive of the nature of the deed of trust and the primary note. It did not limit the security to the amount of the note. For the bank's deed of trust, which it secured, in addition to the note, extended to (2) "payment of such additional amounts as may be hereafter loaned by Beneficiary or its successor to the Trustor or any of them, or any successor in interest of the Trustor, with interest thereon, and any other indebtedness or obligation of the Trustor, or any of them, and any present or future demands of any kind or nature which the Beneficiary or its successor may have against the Trustor, or any of them, whether created directly, or acquired by assignment, whether absolute or contingent, whether due or not, whether otherwise secured or not, or whether existing at the time of the execution of this instrument, or

arising thereafter; (3) performance of each agreement of Trustor herein contained; and (4) payment of all sums to be made by Trustor pursuant to the terms hereof."

This omnibus clause is broad enough to cover the other advances made by the bank. See, Anglo-California Bank v. Cerf, 1905, 147 Cal. 384, 390-391, 81 P. 1077; Langerman v. Puritan Dining Room Co., 1913, 21 Cal.App. 637, 132 P. 617; Lumber & Builders Supply Co. v. Ritz, 1933, 134 Cal.App. 607, 25 P.2d 1002; State Finance v. Laugharn, 9 Cir., 1940, 113 F.2d 59, 60-61; Willard v. National Supply Co., 1942, 51 Cal. App.2d 555, 558, 125 P.2d 519. See Note, Dragnet Clause, 172 A.L.R. 1079-1106.

It is to be borne in mind that the Bottomfields were not ignorant of the transaction between the bank and the bankrupt, Kelly. Bottomfield had been Kelly's partner. He must have known that the money was being secured for the making of improvements on the building. Under the circumstances, the language of the Court of Appeals in Machado v. Bank of Italy, 1924, 67 Cal.App. 769, 774-775, 228 P. 369, 372, is very apposite:

"* * * All the parties knew of the terms of this deed when this consent was given. There was no limitation in any way affecting this agreement. The attorneys for both sides were quite familiar with all the conditions thereof, and plaintiff was represented by counsel. Under such circumstances, the future advances provided for tact, and the deed gives a valid lien for all advances made thereunder although made after notice of the subsequent encumbrance.

"Nor does the mere fact that the amount of such advances was left open alter the situation or indicate that none was intended. Amato and the bank had not agreed upon any specific sum, but only that 60 per cent. of the appraised value of the property would be loaned. This oral agreement to advance at least such amount was obligatory upon the bank. * * *

"Neither does the law require a definite statement of the amount to be loaned be set forth. * * *

"Aside from the express terms of the deed of trust, the entire evidence fully supports the conclusion that such was the intention of the parties. Appellant knew that Amato was without funds and that the defendant bank was loaning him money. He also knew that he intended to bring a large herd of cows to the premises for dairy purposes, and that the barns and equipment on the place were insufficient for their accommodation, and that other improvements would have to be erected for this purpose. He saw the improvements being made. His security was proportionally strengthened by the advances; and if he did not desire them to take precedence over his liens he should not have consented thereto."

And see, Lumber & Builders Supply Co. v. Ritz, supra, 134 Cal.App., pages 610-611, 25 P.2d 1002.

The interpretation which the Referee placed upon the instrument was a limitation which the wording of the instrument considered in relation to the other instruments to which it referred does not bear.

This conclusion would, ordinarily, call for a direction to allow the full claim. However, as the Bottomfields may be able to show a representation from which a mistake or an inference of estoppel to assert a claim against the bank might arise, the Referee should be left free to entertain further proceedings in the matter.

Hence, the ruling above made.